Aimee G. Hamoy, CASB# 221228
Katrina R. Durek, CASB# 289461
BURNHAM BROWN
A Professional Law Corporation
P.O. Box 119
Oakland, California 94604-0119
---
1901 Harrison Street, Suite 1400
Oakland, California  94612-3523
Telephone:     (510) 444-6800
Facsimile:      (510) 835-6666
Email:           ahamoy@burnhambrown.com
                    kdurek@burnhambrown.com

Attorneys for Defendant
TARGET CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE BIERNACKI,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION and DOES 1 TO 200,<br><br>Defendants. | No.  4:18-CV-07381-DMR<br><br>*[Superior Court of California, County of Alameda, Case No. RG18896144 ]*<br><br>**DECLARATION OF AIMEE G. HAMOY IN SUPPORT OF TARGET CORPORATION'S MOTION FOR SUMMARY JUDGMENT**<br><br>**DATE:  September 26, 2019**<br>**TIME:   1:00 p.m.**<br>**COURTROOM:  4**<br>**JUDGE:  Hon. Donna M. Ryu**<br><br>**Complaint filed:  March 8, 2018** |

I, AIMEE HAMOY, declare:

1.        I am an attorney licensed to practice before all courts in the State of California.  I am a partner with the law firm of Burnham Brown, counsel for Defendant TARGET CORPORATION ("Target") in this action.  The following is based on my personal knowledge and, if called as a witness, I could and would testify thereto.

///

1

2.        A true and correct copy of pertinent portions of the deposition transcript of Plaintiff Joanne Bernacki, taken on December 4, 2018, is attached as **Exhibit 1**.

3.        A true and correct copy of pertinent portions of the deposition transcript of Megan Mendenhall, taken on July 9, 2019, is attached as **Exhibit 2**.

4.        A true and correct copy of pertinent portions of the deposition transcript of Plaintiff Theresa Ruslender, taken on July 9, 2019, is attached as **Exhibit 3**.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on January 30, 2019.


/s/ Aimee G. Hamoy
AIMEE G. HAMOY

4821-8998-3881, v. 1

DECLARATION OF AIMEE G. HAMOY  IN SUPPORT OF TARGET CORPORATION'S MOTION FOR SUMMARY JUDGMENT

No. 4:18-CV-07381-DMR

# EXHIBIT 1

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                     FOR THE COUNTY OF ALAMEDA

3

   JOANNE BIERNACKI,                  )
4                                     )
                  Plaintiff,          )
5                                     )
         vs.                          )      No. RG18896144
6                                     )
   TARGET CORPORATION; AND            )
7  DOES 1 TO 200,                     )
                                      )
8                 Defendants.         )
                                      )
9                                     )

10

11                        DEPOSITION OF

12                    JOANNE M. BIERNACKI

13

14                     December 4, 2018

15                        11:15 AM

16

17                    1901 Harrison Street

18                     Fourteenth Floor

19                    Oakland, California

20

21

22

23

              M. GABRIELA OJEDA CSR No. 11221
24

25



1        A      Yes.

2        Q      Okay.

3               MR. FETTO:  Just to make it easier for you,

4    we're not making any claim of any damage to the babies

5    as a result of this accident.

6               Is that fair to say?

7               THE WITNESS:  Yes, that's fair to say.  That's

8    correct.

9               MR. FETTO:  So that will cut down a little

10   bit.

11              MS. HAMOY:  Thank you.

12   BY MS. HAMOY:

13       Q      Can you tell me about what time you arrived at

14   Target on March 12, 2016.

15       A      I would estimate between 9:00 and 11:00 AM.

16       Q      Had you gone anywhere before going to the

17   store?

18       A      No, I believe I came straight from home.

19       Q      Did you have anybody with you when you came to

20   the store?

21       A      My four-year-old daughter, Ruby Biernacki.

22       Q      And what's her date of birth?

23       A      3/17/2011.

24       Q      Okay.  So you said you went to Target straight

25   from your house; is that correct?



```
 1   little bit sturdier.  They have cushion support and
 2   grip on the bottom.
 3        Q     Do you still have those sandals?
 4        A     I believe so.
 5        Q     What did you do when you first entered the
 6   Target store?
 7        A     I got a cart.
 8        Q     Where did you get the cart from?
 9        A     Once you enter the front on the left, there
10   are a bunch of carts lined up.  So from there.
11        Q     And was your daughter with you at that time?
12        A     Yes.
13        Q     Did you have a purse or anything that you
14   carried with you into the store?
15        A     I don't carry a purse often.  I usually just
16   carry my wallet.
17        Q     Do you think you had your wallet with you at
18   that time?
19        A     Yes.
20        Q     Okay.  Well, do you remember getting a
21   shopping cart?
22        A     Yes.
23        Q     And what happened after you got the shopping
24   cart?
25        A     I walked through the main entrance area, and I
```



1    made a left.

2            MR. FETTO:  So you were pushing a cart at this

3    time?

4            THE WITNESS:  Yes.  And I would say within

5    less than a minute the fall happened.  I mean, it was

6    very close to the entrance.  So the front entrance has

7    carpet and then you turn left and then you are on

8    the -- so I was pushing the cart the whole time, and I

9    went towards the left.

10   BY MS. HAMOY:

11       Q    So when you turned your shopping cart towards

12   the left, was that the point at which you slipped or --

13       A    Not exactly.  I would say a few seconds later,

14   so a little bit further down the aisle.

15           MR. FETTO:  Make sure you wait for her to

16   finish her questions before you give an answer.

17           THE WITNESS:  Okay.

18           MR. FETTO:  You will know what she's going to

19   ask before she gets to the question, and in modern

20   society, people are cutting each other off all the

21   time.  But that court reporter can only take down one

22   person at a time, and so in deference to her fingers

23   wait for her to finish, give a little pause so I can

24   object, and then give your answer.

25           THE WITNESS:  Okay.



1    sunglasses at the time?

2        A       No.

3        Q       Do you usually wear glasses or sunglasses?

4        A       No.

5        Q       After you took about seven steps, what did you

6    feel happen?

7        A       I felt my right foot sliding on something and

8    my left foot going back behind me.  I was literally

9    doing the splits, and it was a motion that I couldn't

10   stop.  Like I knew I was going down when it was

11   happening, and there was nothing I could do to stop it.

12       Q       When you say the splits, do you mean with your

13   right foot sliding forward and your left foot going

14   behind you like in a lunge position?

15       A       Yes.

16       Q       Was there anybody else near you at the time

17   that you felt your right foot sliding other than your

18   daughter?

19       A       No.

20       Q       Were there any other customers that you saw

21   prior to your right foot sliding?

22       A       No.

23       Q       Do you know why your right foot was sliding?

24       A       At the moment I did not.

25       Q       Did you learn later why your right foot



JOANNE M. BIERNACKI
JOANNE BIERNACKI vs TARGET

December 04, 2018
38

```
1   started sliding?
2       A      Yes.  When I was on the floor, my butt hit the
3   floor at a certain point after my legs were split, and
4   I saw water on the floor.
5       Q      Where did you see the water?
6       A      It was in front of me, not behind me, and I
7   recall it being to the left of me by the time I was
8   placed on my bottom.  So like I'm facing you here
9   (indicating) I think it was right in front of me not
10  too far away.
11      Q      Could you touch the water you saw with your
12  hand?
13      A      Yes.
14      Q      Did you see where the water had come from?
15      A      No.
16      Q      Did you see any container or item that you
17  think could have been the source of the water?
18      A      No, not that I recall.
19      Q      How much water did you see?
20      A      I can kind of show you with my hands
21  (indicating) and explain that it was maybe about three
22  inches across and one inch down.
23      Q      Was that the size of like a small puddle that
24  you saw, the three inch by five inch?  Would that be a
25  fair description?
```



```
 1     A     Yes.

 2     Q     Was there any liquid around other than that

 3  water that you saw?

 4     A     No.

 5     Q     Do you have any idea how long that water was

 6  there?

 7     A     No.

 8     Q     Prior to you feeling your right foot sliding,

 9  did you see any Target employees in the area?

10     A     Not that I was paying any particular attention

11  to, no.

12     Q     Did your daughter have anything in her hands

13  when she came into the store?

14     A     No, not that I recall.

15     Q     Did she have anything in her hands at the time

16  you felt your right foot sliding?

17     A     No, not that I recall.

18     Q     Was there anything in your shopping cart at

19  the time that you slipped?

20     A     No, not other than my wallet and phone.

21     Q     So you actually hadn't started shopping yet

22  correct?

23     A     That's correct.

24     Q     Was there a particular area of the store you

25  were planning to go to after you turned left with the
```



# EXHIBIT 2

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  --oOo--

4

5   JOANNE BIERNACKI,           )
                         )

6        Plaintiff,     )
                         )

7     vs.                )   No. C18-CV-07381-DMR
                         )

8   TARGET CORPORATION, AND    )
   DOES 1-200,            )

9                         )
         Defendants.    )

10  _____)

11

12

13

14

15      VIDEOTAPED DEPOSITION OF MEGAN MENDENHALL

16

17

18

19     Taken before ELIZABETH O'KANE, a Certified

20    Shorthand Reporter, License No. C-5678,

21          State of California

22

23           July 9, 2019

24

25           --oOo--



1

Certified Shorthand Reporters
2321 Stanwell Drive ▪ Concord, CA 94520-4808
(925) 685-6222 ▪ Fax (925) 685-3829
www.ZandonellaZRS.com

02:25:33  1   statement now.  Okay.  I want you to turn to your

02:25:44  2   statement.  I think it's 5B.  That's the interview you

02:25:51  3   gave.  I'm just looking at --

02:25:53  4       A.   Oh, okay.  Sorry.

02:25:54  5       Q.   This one, okay?

02:25:55  6       A.   This one here.

02:25:56  7       Q.   Okay.  Is all the handwriting on here your

02:26:01  8   handwriting?

02:26:02  9       A.   Yes.

02:26:03  10      Q.   Okay.

02:26:04  11      A.   With the exception of the guest's name at the

02:26:06  12  top.  That is not my handwriting.

02:26:08  13      Q.   Do you know who wrote that?

02:26:10  14      A.   I do not know.

02:26:11  15      Q.   Okay.  It says here you were paged?

02:26:14  16      A.   Yes.

02:26:15  17      Q.   Okay.  And then "List team members either

02:26:19  18  assigned or performing duties in this department or

02:26:23  19  adjacent departments."  Do you see the word "Terry"?

02:26:26  20      A.   Yes.

02:26:27  21      Q.   And then "Disney"?

02:26:28  22      A.   Yes.

02:26:28  23      Q.   Okay.  Who was Terry?

02:26:30  24      A.   Theresa Ruslender.

02:26:32  25      Q.   Ah, okay.  And who is Disney?



Zandonella
REPORTING SERVICE, INC.

25

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
(925) 685-6222 • Fax (925) 685-3829
www.ZandonellaZRS.com

| | | |
|---|---|---|
| 02:26:35 | 1 | A.   He was the team member, Andrew Disney.  We |
| 02:26:38 | 2 | called him Disney, but he no longer works for Target, |
| 02:26:41 | 3 | either. |
| 02:26:42 | 4 | Q.   Okay.  All right.  It says you were not the |
| 02:26:47 | 5 | first to respond. |
| 02:26:48 | 6 | A.   Correct. |
| 02:26:48 | 7 | Q.   You didn't -- you didn't hear the incident. |
| 02:26:52 | 8 | A.   Yeah, I did not. |
| 02:26:53 | 9 | Q.   You didn't see the incident. |
| 02:26:54 | 10 | A.   I did not. |
| 02:26:55 | 11 | Q.   You didn't clean the floor. |
| 02:26:57 | 12 | A.   I did not. |
| 02:26:58 | 13 | Q.   Okay.  You did place cones out?  "Team members |
| 02:27:04 | 14 | who placed or cones or warned others of the condition"? |
| 02:27:08 | 15 | A.   We -- I don't recall placing any cones out, but |
| 02:27:10 | 16 | we did keep people if -- any guests, just anyone from |
| 02:27:14 | 17 | going near her until she was comfortable, or to make |
| 02:27:17 | 18 | sure no one was near her, near the guest who was on -- |
| 02:27:20 | 19 | who fell. |
| 02:27:21 | 20 | Q.   "Team members in the area within 30 minutes |
| 02:27:25 | 21 | prior to the incident."  You were not in the area 30 |
| 02:27:27 | 22 | minutes prior to the incident. |
| 02:27:28 | 23 | A.   No. |
| 02:27:29 | 24 | Q.   Okay.  So is it fair to say that you had no |
| 02:27:31 | 25 | idea what the condition of the floor was like before she |

**Zandonella**
REPORTING SERVICE, INC.

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
(925) 685-6222 • Fax (925) 685-3829
www.ZandonellaZRS.com

02:27:34  1  slipped?

02:27:35  2      A.   Yes.

02:27:35  3      Q.   Okay.  All right.   "Was the floor/ground

02:27:40  4  clean" -- well, "floor/ground clean and dry at the time

02:27:46  5  of the incident?"  You wrote, "Yes."

02:27:48  6      A.   Correct.

02:27:49  7      Q.   You said you felt -- "I felt the area and saw

02:27:51  8  no debris on the floor."

02:27:52  9      A.   Correct.

02:27:53  10      Q.   Okay.  Did you feel any oil on the floor?

02:27:55  11      A.   I did not.

02:27:56  12      Q.   Okay.  So the floor had the common traction?

02:28:02  13      A.   Yes.

02:28:02  14      Q.   You were there before they brought the ice to

02:28:04  15  put on her knee?

02:28:05  16      A.   Yes.

02:28:06  17      Q.   Okay.  Did anyone tell you about picking up any

02:28:08  18  sanitary wipes prior to the fall?

02:28:12  19      A.   No.

02:28:12  20      Q.   Did you ever talk to anyone about picking up

02:28:15  21  any sanitary wipes prior to the fall?

02:28:17  22      A.   No.

02:28:17  23      Q.   Okay.  There are sanitary wipes at the front of

02:28:20  24  the store, right?  That people can pull and wash --

02:28:23  25  clean their hands before they come in the store?

Zandonella
REPORTING SERVICE, INC.

27

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
(925) 685-6222 • Fax (925) 685-3829
www.ZandonellaZRS.com

| | | |
|---|---|---|
| 02:28:26 | 1 | A.    Correct. |
| 02:28:26 | 2 | Q.    That's to hopefully keep down the flu? |
| 02:28:30 | 3 | A.    Yes. |
| 02:28:30 | 4 | Q.    Okay.   Could you just read "Scene Observations" |
| 02:28:38 | 5 | for me? |
| 02:28:39 | 6 | A.    "Describe overall observation of the scene"? |
| 02:28:44 | 7 | Q.    Yes. |
| 02:28:44 | 8 | A.    Okay. |
| 02:28:44 | 9 | MS. HAMOY:   Read it slowly so the reporter can take |
| 02:28:46 | 10 | it down. |
| 02:28:47 | 11 | THE WITNESS:   Okay.   "Guest was on the ground with |
| 02:28:48 | 12 | one of her legs under the cart.   She said she could not |
| 02:28:51 | 13 | get up and needed help." |
| 02:28:53 | 14 | MR. FETTO: |
| 02:28:53 | 15 | Q.    Okay.   Then read what the next -- describe the |
| 02:28:59 | 16 | guest's appearance. |
| 02:29:01 | 17 | A.    "Flip-flops, skirt, black tank top.   She said |
| 02:29:05 | 18 | her knee hurt too badly for her to stand up." |
| 02:29:09 | 19 | Q.    Okay.   And then it says -- I guess they want |
| 02:29:14 | 20 | guest attire again.   Could you read what you wrote? |
| 02:29:17 | 21 | A.    "Black tank top, flip-flops, long skirt." |
| 02:29:21 | 22 | Q.    Okay.   And then underneath that it says print |
| 02:29:26 | 23 | your name, "Megan Mendenhall"? |
| 02:29:29 | 24 | A.    Yes. |
| 02:29:30 | 25 | Q.    Okay.   And then under "Title" is that "Senior |

Zandonella
REPORTING SERVICE, INC.

28

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
(925) 685-6222 • Fax (925) 685-3829
www.ZandonellaZRS.com

| | | |
|---|---|---|
| 02:31:28 | 1 | A.   Okay.   "I was headed up to Guest Service and |
| 02:31:31 | 2 | then I was flagged down by another team member and there |
| 02:31:34 | 3 | was a guest on the ground.   She said she had fallen and |
| 02:31:38 | 4 | then she was telling us she was pregnant.   So we -- her |
| 02:31:43 | 5 | leg was kind of caught underneath the cart, so we moved |
| 02:31:46 | 6 | the cart somewhere and then we helped her to sit up and |
| 02:31:50 | 7 | then just proceeded to call 911 and make sure she was |
| 02:31:56 | 8 | comfortable." |
| 02:31:58 | 9 | Q.   Okay.   Let's see.   Okay.   And then just read |
| 02:32:12 | 10 | the next paragraph if you could.   It said -- you said, |
| 02:32:14 | 11 | "Oh" -- the question is, "Oh, did she say what she had |
| 02:32:18 | 12 | fallen on?"   Just read from there. |
| 02:32:20 | 13 | A.   "No, she didn't say, because when I got there I |
| 02:32:24 | 14 | did not see anything at all on the ground.   So she |
| 02:32:27 | 15 | wasn't sure if she had slipped on really what.   I didn't |
| 02:32:32 | 16 | see any water on the ground or anything she could have |
| 02:32:36 | 17 | slipped on.   We did notice when we were taking care of |
| 02:32:40 | 18 | her that she appeared to just had a pedicure done so she |
| 02:32:45 | 19 | had some very thin flip-flops on, so I don't know if she |
| 02:32:50 | 20 | tripped on that or if there was something, but that |
| 02:32:54 | 21 | didn't appear to me that she had slipped on anything." |
| 02:32:57 | 22 | Q.   Okay.   Do you recall if when you got to the |
| 02:32:59 | 23 | area you took a look around to see if there was anything |
| 02:33:03 | 24 | she could have tripped on? |
| 02:33:05 | 25 | A.   Yes. |

**Zandonella**
REPORTING SERVICE, INC.

31

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
(925) 685-6222 • Fax (925) 685-3829
www.ZandonellaZRS.com

**EXHIBIT 3**

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                   --oOo--

4

5    JOANNE BIERNACKI,                    )
                                          )
6            Plaintiff,                   )
                                          )
7        vs.                              )    No. C18-CV-07381-DMR
                                          )
8    TARGET CORPORATION, AND              )
     DOES 1-200,                          )
9                                         )
             Defendants.                  )
10   _____)

11

12

13

14

15        VIDEOTAPED DEPOSITION OF THERESA RUSLENDER

16

17

18

19        Taken before ELIZABETH O'KANE, a Certified

20        Shorthand Reporter, License No. C-5678,

21                  State of California

22

23                  July 9, 2019

24

25                   --oOo--



Certified Shorthand Reporters
2321 Stanwell Drive ● Concord, CA 94520-4808
(925) 685-6222 ● Fax (925) 685-3829
www.ZandonellaZRS.com

| | | |
|---|---|---|
| 12:07:13 | 1 | cashiering and you're also -- you're also monitoring the |
| 12:07:16 | 2 | cashiers?  No? |
| 12:07:18 | 3 | A.   I'm not cashiering when I'm up running the |
| 12:07:20 | 4 | front. |
| 12:07:20 | 5 | Q.   You're checking the floors. |
| 12:07:22 | 6 | A.   I'm running this front back and forth to make |
| 12:07:25 | 7 | sure that guests are getting their proper checkouts and |
| 12:07:31 | 8 | guiding them to what check lane where there's not lines, |
| 12:07:34 | 9 | that kind of stuff.  Checking and putting stuff away, |
| 12:07:37 | 10 | yes. |
| 12:07:37 | 11 | Q.   And was it also your responsibility to check |
| 12:07:40 | 12 | the aisle where Joanne Biernacki fell? |
| 12:07:43 | 13 | A.   Yes. |
| 12:07:44 | 14 | Q.   Okay.  And would you do that -- would you |
| 12:07:46 | 15 | walk -- would you be standing behind the cashier |
| 12:07:49 | 16 | counters when you did that? |
| 12:07:51 | 17 | A.   These are the front of the check lanes.  So |
| 12:07:53 | 18 | this is the front.  This is the back of the check lanes. |
| 12:07:56 | 19 | I'm in front of them. |
| 12:07:58 | 20 | Q.   Okay.  So when you mean the front, you mean the |
| 12:08:02 | 21 | part of the checkout lane where the customer would go to |
| 12:08:04 | 22 | first. |
| 12:08:05 | 23 | A.   Correct. |
| 12:08:05 | 24 | Q.   Okay.  So you'd be walking back and forth in |
| 12:08:08 | 25 | this area all the time, correct? |

**Zandonella**
REPORTING SERVICE, INC.

45

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
(925) 685-6222 • Fax (925) 685-3829
www.ZandonellaZRS.com

| | | |
|---|---|---|
| 12:09:17 | 1 | back up for the moment and talk about how you -- when |
| 12:09:19 | 2 | you first learned that there was an incident.  This is |
| 12:09:23 | 3 | Mrs. Biernacki's fall. |
| 12:09:27 | 4 | What was your first indication that there was a |
| 12:09:30 | 5 | problem? |
| 12:09:36 | 6 | A.  So I was standing about two, three feet away |
| 12:09:40 | 7 | from her. |
| 12:09:41 | 8 | Q.  And what happened that made you think there was |
| 12:09:43 | 9 | a problem? |
| 12:09:46 | 10 | A.  She had her daughter with her.  Daughter's |
| 12:09:48 | 11 | running around.  And she said "ow" as I watched her.  I |
| 12:09:56 | 12 | mean, she was right behind me.  Or like where the chair |
| 12:10:01 | 13 | is. |
| 12:10:02 | 14 | Q.  Okay.  So you were looking away from her when |
| 12:10:05 | 15 | you heard the "ow, "correct? |
| 12:10:10 | 16 | A.  I kind of saw it from peripheral, you know, |
| 12:10:13 | 17 | my -- |
| 12:10:14 | 18 | Q.  It's a peripheral vision of her? |
| 12:10:17 | 19 | A.  Yeah. |
| 12:10:17 | 20 | Q.  Okay.  So you knew there was someone off your |
| 12:10:20 | 21 | right shoulder.  Okay? |
| 12:10:21 | 22 | A.  Yes. |
| 12:10:21 | 23 | Q.  And then you heard the word "ow," correct? |
| 12:10:24 | 24 | A.  Yes. |
| 12:10:25 | 25 | Q.  And then did you turn to look to see what was |

**Zandonella**
REPORTING SERVICE, INC.

47

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
(925) 685-6222 • Fax (925) 685-3829
www.ZandonellaZRS.com

| 12:29:02 | 1 | A. Um-hum. Yes. |
| 12:29:03 | 2 | Q. Okay. |
| 12:29:03 | 3 | "Who was at the scene when you arrived? |
| 12:29:06 | 4 | Please list names. |
| 12:29:09 | 5 | "No, I was the first one on-scene." |
| 12:29:11 | 6 | A. Yes. |
| 12:29:11 | 7 | Q. Okay. |
| 12:29:11 | 8 | "Were the guest's clothes wet or |
| 12:29:14 | 9 | damaged? |
| 12:29:14 | 10 | "No, not at all. |
| 12:29:17 | 11 | "Was the ground clean and dry when you arrived |
| 12:29:20 | 12 | at the scene?" |
| 12:29:21 | 13 | You checked, "Yes, but there was one of the |
| 12:29:24 | 14 | sanitary wipes on the floor." |
| 12:29:26 | 15 | Correct? |
| 12:29:27 | 16 | A. Yes. |
| 12:29:28 | 17 | Q. But really, there were two or three, correct? |
| 12:29:32 | 18 | A. Yes. |
| 12:29:33 | 19 | Q. Okay. We're not -- we're just trying to get |
| 12:29:39 | 20 | the best record. |
| 12:29:40 | 21 | A. Right. |
| 12:29:41 | 22 | Q. You know. |
| 12:29:41 | 23 | A. But they weren't in the area of where she was |
| 12:29:45 | 24 | on the floor. |
| 12:29:45 | 25 | Q. Yes. You've described that. |

Zandonella
REPORTING SERVICE, INC.

63

Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
(925) 685-6222 • Fax (925) 685-3829
www.ZandonellaZRS.com

| | | |
|---|---|---|
| 12:29:48 | 1 | A. Okay. |
| 12:29:48 | 2 | Q. I mean, I don't want to -- we can argue that |
| 12:29:49 | 3 | point later. |
| 12:29:50 | 4 | "Was merchandise, an object or store equipment |
| 12:29:55 | 5 | involved?" |
| 12:29:55 | 6 | And you put, "No." |
| 12:29:57 | 7 | But really, it was the sanitary wipe, like the ones |
| 12:30:00 | 8 | you find when you enter the store, correct? |
| 12:30:02 | 9 | A. No. |
| 12:30:03 | 10 | Q. It wasn't a sanitary wipe like you would find |
| 12:30:06 | 11 | at the store. |
| 12:30:07 | 12 | A. That wasn't involved in her fall. |
| 12:30:09 | 13 | Q. Okay. Okay. But it was -- that was the thing |
| 12:30:15 | 14 | you did find on the floor was something that was |
| 12:30:19 | 15 | distributed at the store at the front, correct? |
| 12:30:23 | 16 | A. The guests will take them if needed, yes. |
| 12:30:26 | 17 | Q. When you looked at the little -- did you have a |
| 12:30:28 | 18 | chance to look at the little girl after you saw the |
| 12:30:30 | 19 | fall? |
| 12:30:30 | 20 | A. Yes. |
| 12:30:31 | 21 | Q. Did she have anything in her hands? |
| 12:30:33 | 22 | A. That I don't recall. |
| 12:30:34 | 23 | Q. Okay. Did you see her before -- as you were |
| 12:30:38 | 24 | walking back and forth, did you see them enter the |
| 12:30:41 | 25 | store? |



Certified Shorthand Reporters
2321 Stanwell Drive • Concord, CA 94520-4808
(925) 685-6222 • Fax (925) 685-3829
www.ZandonellaZRS.com