UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOANNE BIERNACKI,

    Plaintiff,

v.

TARGET CORPORATION,

    Defendant.

Case No. 18-cv-07381-DMR

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 19

This case arises out of a slip-and-fall incident that occurred in a Target store on March 12, 2016. Plaintiff Joanne Biernacki filed an action for negligence and premises liability against Defendant Target Corporation ("Target"). Target now moves for summary judgment. [Docket Nos. 19 ("Mot"), 27 ("Reply").] Biernacki opposes. [Docket No. 24 ("Opp.").] The court held a hearing on October 10, 2019.

Upon consideration of the parties' briefing and oral arguments, the court grants Target's motion.

**I.    FACTUAL BACKGROUND**

The factual background is taken from the deposition testimony of Biernacki and two Target employees, Theresa Ruslender and Megan Mendenhall.

    **A.    Biernacki's Testimony**

On March 12, 2016, Beirnacki visited the Target store located at 4400 Towne Center Blvd. in El Dorado Hills, California. [Docket No. 1, Ex. A ("Compl.").] She was accompanied by her four-year-old daughter. [Docket No. 19-1 ("Hamoy Decl.,"), Ex. 1 ("Biernacki Depo.") at 31:21.] The two arrived at the store sometime between 9:00 and 11:00 a.m. *Id.* at 31:15.

Upon entering the store, Biernacki obtained a shopping cart. *Id.* at 34:5-7. She then walked through the main entrance area and made a left turn. *Id.* at 34:23-25-35:1. Less than a minute later, she fell to the ground. *Id.* at 35:4-9. Biernacki felt her right foot "sliding on something" and her

left foot "going back behind [her]." *Id.* at 37:7-11. She stated that she "was literally doing the splits . . . and there was nothing I could do to stop it." *Id.* at 37:7-11. At the moment Biernacki was falling, she did not know why her foot was sliding. *Id.* at 37:23-24. Once she had fallen to the ground, she saw water on the floor to the front and left of her. *Id.* at 38:2-10. The water was close enough that Biernacki could touch it with her hand. *Id.* at 38:11-13. The pool of water was about three inches by one inch across.[1] *Id.* She did not see where the water had come from and did not see any container or other item that could be the source of the water. *Id.* at 38:14-18. She did not know how long the water had been there. *Id.* at 39:5-7. Biernacki testified that no one was close to her at the time she felt her right foot sliding. *Id.* at 37:16-22. She did not notice whether any Target employees were in the area. *Id.* at 39:8-11.

### B. Ruslender's Testimony

Target employee Theresa Ruslender was working in the cash register area when Biernacki fell.[2] Hamoy Decl., Ex. 3 ("Ruslender Depo.") at 45:14-23. Ruslender was "running . . . back and forth" to make sure that customers were able to check out properly, guiding guests to available checkout lanes, and checking and putting items away. *Id.* at 35:6-9. She acknowledged that it was her responsibility to check the aisle where Biernacki fell. *Id.* at 11-13. She stated that Biernacki fell in the main aisle, between the registers and the jewelry department, and that Ruslender was two or three feet away from Biernacki at that time. *Id.* at 47:4-7. Ruslender was not looking directly at Biernacki when she fell, but she knew there was someone "off [her] right shoulder" and she heard an "ow." *Id.* at 47:4-7, 14-23. Ruslender saw Biernacki slipping "in [a] splitting motion" before Biernacki went down on one knee and then fell to her side. *Id.* at 91:9-20.

The parties agree that Ruslender prepared an incident report after the event. The report is

---

[1] The testimony on this point is ambiguous. Biernacki said that the puddle was "maybe about three inches across and one inch down." Biernacki Depo. at 38:20-22. Defendant's counsel then asked, "Was that the size of like a small puddle that you saw, the three inch by five inch? Would that be a fair description?" *Id.* at 38:23-25. Biernacki replied "yes." *Id.* at 39:1. Therefore, it is not clear whether Biernacki's testimony is that the size of the puddle was three inches by one inch or three inches by five inches.

[2] The parties submitted different portions of Ruslender's deposition testimony. *See* Hamoy Decl., Ex. 3; Docket Nos. 24-1, 24-3 ("Fetto Decl."), Ex. C. Both excerpts are referred to as "Ruslender Depo."

referenced in both parties' briefs as well as in Ruslender's deposition testimony. However, the only incident report submitted into evidence is attached to Fetto's declaration as Exhibit A, and is signed by a "Teagan Friend,"[3] who is otherwise not mentioned by either party. Neither party submitted Ruslender's report. As a result, the evidentiary record is not as clear as it could be. For example, Biernacki says that Ruslender's report stated that there were "sanitary wipes" on the floor in the area where Biernacki fell (Opp. at 3), but the incident report attached to Fetto's declaration does not reference "sanitary wipes." *See* Fetto Decl., Ex. A.

Ruslender testified that the ground was clean and dry when she arrived at the scene. Ruslender Depo. at 63:11-14. However, she recorded in her report that "one of the sanitary wipes" was on the floor. *Id.* at 33:17-22, 63:13-14. In her deposition, Ruslender testified that there were actually two or three sanitary wipes on the floor at the general scene of the incident. *Id.* at 63:6-18. She also stated that there is a sanitary wipe dispenser at the front of the store. *Id.* at 64:7-16. Although the deposition testimony is not entirely clear on this point, it appears that Ruslender agreed that the wipes she found on the floor were of the same type as the ones that are distributed at the front of the store. *See id.* According to Ruslender, the wipes "weren't in the area of where [Biernacki] was on the floor." *Id.* at 63:17-24. Ruslender testified that the wipes were "to the left of [Biernacki's] cart" where her daughter had just run, and were "in a trail to [Biernacki's] daughter." *Id.* at 51:1-2. Ruslender stated that she believed the reason the sanitary wipes were on the ground were because Biernacki's daughter was playing with them and dropped them as she walked. *Id.* at 51:19-24. Ruslender said that she did not recall seeing the daughter grab any wipes, nor did she recall seeing any wipes in the daughter's hands. *Id.* at 86:3-6, 88:5-6.

Ruslender testified that she had been walking back and forth in the area and did not see any sanitary wipes on the ground before Biernacki fell. *Id.* at 45:24-25-46:1, 13-14. She stated that she would have noticed if something had been left on the floor. *Id.* at 46:2-4. Ruslender testified that there is no store procedure for keeping "sweep logs" to record how often the floor stores are swept, except for the restrooms. *Id.* at 46:16-24. Ruslender testified that two other employees came over

---

[3] Teagan Friend is referred to as the "team leader" in Ruslender's deposition. Ruslender Depo. at 30:20-22.

3

after Biernacki fell and she showed them the sanitary wipes. *Id.* at 49:1-5. She said that they did not say anything to her about it. *Id.* at 49:6-8.

### C. Mendenhall's Testimony

Megan Mendenhall is another Target employee who responded to the incident. The deposition testimony references a written statement that Mendenhall wrote about the fall, but neither party submitted a copy of it. [Hamoy Decl., Ex. 2 ("Mendenhall Depo.") at 25:1-20.] Mendenhall was paged to the scene after Biernacki fell. *Id.* at 25:15-16. She did not see or hear the incident. *Id.* at 26:7-10. She had not been in the area within 30 minutes prior to the fall and did not know the condition of the floor before Biernacki fell. *Id.* at 26:20-25, 27:1-2. According to Mendenhall, the ground was clean and dry at the time of the incident. *Id.* at 27:3-6. She said that she felt the ground in the area and did not see any debris or feel any water on the floor. *Id.* at 27:7-11, 31:13-17. Mendenhall stated that Biernacki did not say what she slipped on. *Id.* at 31:9-17.

## II. LEGAL STANDARD FOR RULE 56 MOTIONS

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Anderson v. Libby Lobby, Inc.*, 477 U.S. 242, 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id.* at 249.

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). In other words, there must exist more than "a

4

scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott*, 550 U.S. at 380.

## III. DISCUSSION

Target raises two arguments in support of summary judgment. First, it argues that Biernacki's "vague and generic testimony does not provide sufficient evidence for a trier of fact to find that Target's negligence caused [her] injury." Mot. at 6. Second, Target asserts that Biernacki has not proffered any evidence that Target had actual or constructive notice of any alleged dangerous condition. *Id.* at 6-7. Because the court finds that Target is entitled to summary judgment on the issue of constructive notice, the court does not reach the issue of causation.

### A. Legal Standard for Constructive Notice

Premises liability is a type of negligence. *Peneda v. Ennabe*, 61 Cal. App. 4th 1403, 1407 (1998) ("[T]he liability of landowners for injuries to people on their property [is] governed by general negligence principles."). California law establishes that "although a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205, 36 P.3d 11, 14 (2001). To succeed on a negligence claim, a plaintiff must establish that the defendant "had a duty to [the] plaintiff, that the duty was breached by negligent conduct, and that the breach was the cause of damages to the plaintiff." *Brooks v. Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611, 1619, 264 Cal. Rptr. 756 (Ct. App. 1989).

"In the context of premises liability, 'the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability.'" *Carrillo v. Target Corp.*, No. 17-cv-05693-WHA, 2019 WL 201514, at *1 (N.D. Cal. Jan. 15, 2019) (quoting *Ortega*, 26 Cal. 4th at 1206). In order to survive a summary judgment motion, a plaintiff must present evidence regarding the defendant's alleged constructive notice of the defect. *Eidem v. Target Corp.*, 2011 WL 3756144, at *8 (C.D. Cal. Aug. 24, 2011). The plaintiff has the burden of showing that the defendant "had

5

notice of the defect in sufficient time to correct it." *Ortega*, 26 Cal. 4th at 1206. "The 'mere possibility' that a defendant had notice of a dangerous condition is not enough to impose liability under California law." *Lemberg v. JPMorgan Chase Bank, N.A.*, No. 17-cv-05241-JSC, 2019 WL 1975441, at *5 (N.D. Cal. Apr. 16, 2019).

Biernacki does not assert that Target had actual notice of the alleged dangerous condition before her fall. Therefore, the court limits its analysis to the issue of constructive notice.

**B. Analysis**

Target contends that it did not have notice of any dangerous condition because its employees "inspected the area before the incident and did not see any liquid on the floor." Mot. at 7. The deposition testimony is vague on this point; it is unclear, for example, whether Ruslender was specifically checking the floor for defects or spills, and how much time had passed since she last checked the floor area where Biernacki fell.[4] In opposition, Biernacki argues that Target has no evidentiary support for its claim that they did not have constructive notice of the wet floor, because Target did not keep any inspection reports or sweep logs, does not have a video of the event, and does not have any pictures of the area where the fall happened.[5] *Id.* She asserts that "[t]he fact that no Target employee found [the wipe] before Ms. Biernacki's fall (and that they kept no contemporaneous logs to the contrary) is proof that they did not look to see if the area where Ms. Biernacki's fell [*sic*]." Opp. at 4.

Biernacki's argument turns the applicable legal standard on its head, because Biernacki—not Target—bears the burden of offering evidence from which a reasonable juror could infer that Target had constructive notice of a dangerous condition. *Eidem* illustrates this point. In *Eidem*, the plaintiff fell in the defendant's store and claimed that the fall was caused by a sticky substance on the floor. 2011 WL 3756144, at *4. None of the witnesses nor the defendant's employees saw any

---

[4] There is one reference to "earlier testimony" where Ruslender apparently stated that she had checked the floor area 20 seconds before the incident, but that portion of her testimony was not submitted. *See* Ruslender Depo. at 88:16-21.

[5] Biernacki's three-page opposition does not explain her theory of the case. Biernacki testified that she saw a small pool of water when she fell, but devotes most of her sparse argument to the issue of the sanitary wipes that Ruslender found. The court infers that Biernacki's theory is that she believes that she slipped on a sanitary wipe which left a small pool of water on the floor either before or after she slipped on it.

liquid or substance on the floor. *Id.* The court found that there was a genuine issue of material fact as to whether a dangerous condition existed given the conflicting testimony between the plaintiff and the defendant's employees. *Id.* at *7. However, it determined that the plaintiff failed to introduce "any affirmative evidence regarding [the defendant's] constructive notice of the alleged sticky substance" she slipped on. *Id.* at *9-10. The plaintiff relied solely on the defendant's lack of documentation regarding its store inspections. *Id.* at *7. The court held that the plaintiff had not met her burden of producing evidence regarding constructive notice and granted summary judgment in favor of the defendant. *Id.* at *7-10. The court reasoned that even if a jury did not credit the defendant employee's testimony that he had inspected the floor 15 minutes before the plaintiff fell, there would still be no affirmative evidence to support the plaintiff's position that the defendant had constructive notice of the defect. *Id.* at *9.

Other courts have similarly granted summary judgment where the plaintiff failed to introduce affirmative facts regarding the defendant's constructive notice. *See, e.g.*, *Lemberg*, 2019 WL 1975441, at *6 (granting summary judgment where the plaintiff "failed to meet her burden and offer evidence demonstrating Defendant's actual or constructive knowledge of any dangerous condition at the ATM at-issue."); *Ellis v. Target Corp.*, 2016 WL 9185390, at *4 (C.D. Cal. July 19, 2016) (noting that "it is [the plaintiff's] burden to set forth evidence that affords a reasonable basis to conclude that [the defendant] had notice of a dangerous condition and reasonable time to remove the condition"); *Carrillo v. Target Corp.*, No. 17-cv-05693-WHA, 2019 WL 201514, at *2 (N.D. Cal. Jan. 15, 2019) (granting summary judgment where "[t]he record [was] silent as to whether or not defendant knew of the spill, how the spill occurred, the amount of time the spill existed on the floor prior to plaintiff's fall, or the timing and scope of defendant's inspections of the store's aisles"). In contrast, courts have denied summary judgment where there is affirmative evidence from which a jury could conclude that the defendant had constructive notice. *See Sorensen v. Target Corp.*, No. 12-cv-04025-JCS, 2013 WL 6513827, at *7 (N.D. Cal. Dec. 10, 2013) (denying summary judgment because the plaintiff proffered video surveillance footage that a jury could decide contradicted the defendant's account of how long the dangerous condition existed).

Here, Biernacki does not offer affirmative evidence that Target had constructive notice that

7

there were sanitary wipes or any other dangerous condition on the floor. Instead, she points to Target's lack of evidence on these issues, such as a video or photographs. However, a plaintiff "may not compensate for the absence of affirmative evidence by faulting [the defendant's] lack of evidence." *Ellis*, 2016 WL 9185390, at *6; *see also Sorensen*, 2013 WL 6513827, at *7 ("[A]bsence of sweep logs alone might be insufficient to create a genuine factual dispute."). A plaintiff "must present affirmative evidence in order to defeat a properly supported motion for summary judgment . . . even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Putting the burden on the defendant to prove lack of notice "would, contrary to existing negligence law, permit an inference of negligence to be drawn against the owner based solely on the fact that the fall or accident occurred." *Ortega*, 26 Cal. 4th at 1206.

Given that Biernacki has offered no affirmative evidence that Target had constructive notice of the alleged dangerous defect, Target is entitled to judgment as a matter of law.

## IV. SPOLIATION

Biernacki argues that Target's lack of records, including sweep logs, photographs, and video evidence, constitutes spoliation of evidence. Mot. at 4. To the extent that Biernacki is attempting to seek evidentiary sanctions in this motion, the argument is specious. Biernacki cites absolutely no facts or legal authority in support of her position and the court declines to speculate as to what Biernacki's argument might be. *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

## V. CONCLUSION

For the reason stated above, the court grants Target's motion for summary judgment. The Clerk shall enter judgment for Target and against Biernacki and close the file in this matter.

**IT IS SO ORDERED.**

Dated: October 28, 2019

Donna M. Ryu
United States Magistrate Judge

8